MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor,
GLORIA ELENA DHEMING

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| In Re: | Case No.  11-56798 |
| GLORIA ELENA DHEMING, | Chapter 11 |
| Debtor. | **COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT** |
|  | (DATED February 11, 2013) |

## **INTRODUCTION**

This is the debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan).  The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 10% of their allowed claims in one-time lump sum.  Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by the debtor's counsel, and objections to confirmation must be filed and served, no later than _____.   The court will hold a hearing on confirmation of the Plan on _____ at _____.

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation.  **Exhibit 1** includes background information

1

regarding the debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. **Exhibit 2** contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. **Exhibit 3** shows the debtor's monthly income and expenses. **Exhibit 4** describes how much the debtor is required to pay on the effective date of the plan. **Exhibit 5** shows the debtor's monthly income and expenses related to each investment property. **Exhibit 6** shows additional feasibility analysis relating to the funding of the plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as the debtor performs all obligations under the Plan. If the debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. The debtor will be discharged from all pre-confirmation debts (with certain exceptions) if the debtor makes all Plan payments. Enforcement of the Plan, discharge of the debtor, and creditors' remedies if the debtor defaults are described in detail in Parts 5 and 6 of the Plan.

| PART 1: | TREATMENT OF SECURED CLAIMS |
| --- | --- |

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time**

The debtor will pay the entire amount contractually due with interest, as follows:

- Principal reduction in the amount of $300,000 on the Effective Date;

- Monthly payments are calculated on a 30-year amortization schedule;

- The entire unpaid balance to be paid on the (10th) anniversary of the Effective Date; and

Case: 11-56798   Doc# 224   Filed: 02/11/13   Entered: 02/11/13 16:03:53   Page 2 of 23

- Monthly payments shall commence on the (15th) day of the month following the Effective Date and continue on the 15th day of each month thereafter.

Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan. Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

| Class | Name of Creditor | Collateral | Amount Due | Amount after Principal Reduction | Interest Rate | Monthly Payment |
|-------|------------------|------------|------------|----------------------------------|---------------|-----------------|
| **1(A)** | U.S. Bank (1st) | California Street | $1,550,000.00$^*$ | $1,250,000.00$^*$ | 3.5% (10 years) | $5,630.00$^•$ |

### Debtor to Strip Lien to Value of Collateral, Adjust Terms and Pay Amount Due Over Time

The debtor contends that the value of the collateral is less than the amount of the claim. Before confirmation, the debtor will obtain an order from the court determining the value of the collateral. The debtor will pay as a secured claim the amount equal to the value of the collateral. The debtor will pay the secured claim in full with interest as follows:

- Principal reduction in the amount of $300,000 on the Effective Date;

- Monthly payments are calculated on a 30-year amortization schedule;

- The entire unpaid balance to be paid on the (10th) anniversary of the Effective Date;

- Monthly payments shall commence on the (15th) day of the month following the Effective Date and continue on the 15th day of each month thereafter; and

- Any remaining amount due is a general unsecured claim treated in Part 2.

---

$^*$ To be adjusted to balance on Effective Date.

3

Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan. Creditors in these classes may not repossess or dispose of their collateral so long as the debtor is not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date the debtor obtains a discharge. The claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

| Class | Name of Creditor | Collateral | Amount Due | Amount after Principal Reduction | Interest Rate | Monthly Payment |
|-------|------------------|------------|------------|----------------------------------|---------------|-----------------|
| **1(B)** | Wells Fargo Bank (1st) | Dolores Street | $ 1,332,000 | $1,030,000 | 3.5% (10 years) | $4,600.00 |

### Debtor to Strip Lien to Value of Collateral, Pay and Settle the Claim in Full

The debtor contends that the value of the collateral is less than the amount of Redwood Mortgage Investors VIII's ("Redwood Mortgage" herein) claim.

Debtor will pay as a secured claim an amount that is equal to the value of the collateral. Creditors in these classes may not repossess or dispose of their collateral so long as the debtor is not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Redwood Mortgage's claim is cross-collateralized against the debtor's two real properties. On March 9, 2012, this court entered an order valuing Redwood's lien against the debtor's Dolores Street Property at $0.

For the purpose of this plan, the debtor is treating Redwood as having only one lien against her California Street Property. The secured portion of its claim will be secured by the California Street Property, and the unsecured portion of its claim will be treated as a general unsecured non-

4

priority claim in Part 2 of the plan. Redwood now rests upon an amended proof of claim in the approximate amount of $660,000, which it may claim to be fully secured. A dispute exists between the debtor and Redwood as to the date of valuation, with Redwood contending that the California Street property should be valued at time of confirmation, in which case it might have a higher value. The debtor contends that the claim should be valued soon or about July 21, 2011, the date that the Debtor commenced the within bankruptcy proceedings. (The case was originally filed as a Chapter 13 case on that date, and converted to Chapter 11 on September 14, 2011). Because the property has not been appraised by either party as of the projected confirmation date, the value of the property is not yet known.

Payments to claimants in these classes may continue past the date the debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

| Class | Name of Creditor | Description | Value of Interest | Payment on Effective Date |
|-------|------------------|-------------|-------------------|---------------------------|
| 1(C) | Redwood Mortgage (2n$^d$) | California Street /Dolores Street | $300,000 | $300,000 |

### Debtor to Strip Off Lien

Prior to confirmation, the debtor will obtain an order(s) or stipulation(s) fixing the secured amount of the following creditors' claims at zero. The debtor will pay nothing to those creditors as secured claims. Any claim of a creditor whose lien is stripped is a general unsecured claim treated in Part 2. Creditors in these classes shall retain their interest in the collateral consistent with the Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

5

| Class | Name of Creditor | Collateral | Value Claimed | Value to be Fixed |
|---|---|---|---|---|
| 1(D) | Bank of New York Mellon (2nd) | Dolores Street | $466,654.18 | $0 |

### Property Surrendered

The debtor surrendered the following collateral following the creditor's motion for relief from stay on February 27, 2012. The entire claim has been satisfied in full through surrender of the collateral. **The following claim is not impaired and is not entitled to vote on confirmation of the Plan.**

| Class | Name of Creditor | Description of Collateral |
|---|---|---|
| 1(E) | Toyota Motor Credit Corporation | 2007 Toyota Tundra |

## PART 2:    TREATMENT OF GENERAL UNSECURED CLAIMS

This class consists of all allowed unsecured claims (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) other than priority claims. This class of claims consists of unsecured liens and credit card debt in the amount of $792,204.04, and shall be paid as follows:

**Percent Plan.** The creditors will receive 10 percent of their allowed claim paid in full on the Effective Date.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated below whether a particular claim is disputed.

///

///

///

///

6

| Name of Creditor | Amount of Claim | Disputed Y/N | Estimated Amount to be Paid |
|---|---|---|---|
| **Wells Fargo Bank**<br>(partially unsecured lien on Dolores Street) | $278,761.52 | N | $27,876 |
| **Redwood Mortgage** | $360,000.00[1] | Y | $36,000 |
| **Bank of New York Mellon**<br>(wholly unsecured lien on Dolores Street) | $ 462,674.08 | N | $ 46,267 |
| **Wells Fargo Bank**<br>(Credit Card) | $14,807.92 | N | $1,481 |
| **Wells Fargo Bank**<br>(Line of Credit) | $6,878.41 | N | $687 |
| **Internal Revenue Service**<br>(Taxes) | $29,082.11[2] | YES | $2,908 |
| **TOTAL** | $**1,151,000.00** | | **$115,000** |

Distributions under this Plan to creditors in this class whose claims are disputed shall be governed by Part 7(b).

After the Effective Date of this Plan, the debtor shall be authorized to settle and compromise a disputed claim in her sole discretion without court approval.

## PART 3:     TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS

(a)     Professional Fees

The debtor will pay the following additional professional fees in full upon approval by the court, as funds become available to the debtor, and by agreement with the professional. The following amounts reflect total fees to be paid by the debtor in addition to amounts previously paid.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Macdonald | Fernandez LLP (Counsel for Debtor) | $50,000 |
| Scott B. Price (Accountants for Debtor) | $25,000 |

---

[1] This amount is the estimated deficiency remaining after Redwood has paid $300,000 on a claim amount of $450,000, which is what was represented by Redwood to be the amount of its claim on or about October 1, 2012, and time of the hearing before this court. Subsequently, Redwood filed an amended claim exceeding $660,000, the increase primarily due to attorneys' fees. If Redwood's claim is allowed in that amount, the deficiency may increase to as much as $360,000. Debtor does not believe that Redwood is entitled to attorneys' fees, because its claim exceeds the value of its collateral, and because Redwood is not the prevailing party in these proceedings. Debtor will object to Redwood's claim as part of these proceedings.

[2] On June 13, 2012, the debtor filed a claim objection to the Internal Revenue Service's Proof of Claim, filed on September 21, 2011 as Claim No. 4. The hearing on the objection has been continued from time to time pending IRS review of certain amended tax returns.

Professionals may not take collection action against the debtor so long as the debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)    Other Administrative Claims

All fees payable to the United States Trustee as of Confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

(c)    Tax Claims

The debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with Section 511 of the Bankruptcy Code. Payments shall commence on the fifteenth (15th) day of the month following the Effective Date and shall terminate on or before September 13, 2016 pursuant to Bankruptcy Code Section 1129(a)(9)(C). To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against the debtor so long as the debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Statutory Interest Rate | Monthly Payment |
|---|---|---|---|---|
| **Internal Revenue Service** (Taxes) | $502,500.95 | Yes[3] | 3% | $10,506.72 |

(d) Security Deposits

The debtor shall place the following security deposits in a segregated account and shall refund the total amount of security deposit less any lawful deductions upon the termination of the

---

[3] On June 13, 2012, the debtor filed an objection to the claim of the Internal Revenue Service which was filed on September 21, 2011 as Claim No. 4. The hearing on the objection has been continued from time to time pending IRS review of certain amended tax returns.

Case: 11-56798    Doc# 224    Filed: 02/11/13    Entered: 02/11/13 16:03:53    Page 8 of 23

lease agreement.

| Name of Creditor | Total Amount of Security Deposit Held | Amount of Security Deposit Held Entitled to Priority |
|---|---|---|
| Brent Hoff (tenant at 868 Dolores) | $3,600 | $2,600 |
| Seth Familian/Yutende Afolabi/Ben Elliott (tenants at 866 Dolores) | $3,800 | $2,600 |
| Simon Phipps /Kelly Dunican (tenants at 864 Dolores) | $5,000 | $,2600 |
| Dan Ruthental (tenant at 2787 California) | $2,450 | $2,450 |
| Kevin Marshall /Melissa McCaw (tenants at 2787 California) | $3,450 | $2,600 |
| Lewis Butler Architects, Inc. dba Butler Armsden Architects (tenant at 2787 California) | $3,500 | $3,500 |

Distributions under this Plan to creditors in this class whose claims are disputed shall be governed by Part 7(b).

After the Effective Date of this Plan, the debtor shall be authorized to settle and compromise a disputed claim in her sole discretion without court approval.

## PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. The debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. There are no pre-confirmation arrears.

| Name of Counter-Party | Description of Contract/Lease | Monthly Payment Made to the Debtor Unless Otherwise Noted | Term of the Lease |
|---|---|---|---|
| Brent Hoff (tenant at 868 Dolores) | Apartment lease pertaining to 864-868 Dolores Street Property | $3,100 | Month-to-Month |
| Seth Familian/ Yutende Afolabi/ Ben Elliott (tenants at 866 Dolores) | Apartment lease pertaining to 864-868 Dolores Street Property | $3,300 | Month-to-Month |
| Simon Phipps / Kelly Dunican (tenants at 864 Dolores) | Apartment lease pertaining to 864-868 Dolores Street Property | $3,225 | Month-to-Month |

9

| | | | |
|---|---|---|---|
| Dan Ruthental (tenant at 2787 California) | Apartment lease pertaining to 2787 California Street Property | $1,950 | Month-to-Month |
| Kevin Marshall / Melissa McCaw (tenants at 2787 California) | Apartment lease pertaining to 2787 California Street Property | $2,4050 | Month-to-Month |
| Lewis Butler Architects, Inc. dba Butler Armsden Architects (tenant at 2787 California) | Commercial lease pertaining to 2787 California Street Property | $2,700 | 1 Year |

(b)   Executory Contracts/Unexpired Leases Rejected.  Upon confirmation of the Plan, the debtor shall reject all other executory contracts and unexpired leases.  The last date upon which a proof of claim for damages arising from rejection of said executory contracts and unexpired leases may be filed shall be 30 calendar days from the date the order confirming this Plan is entered.  Upon the Effective Date of the Plan, the debtor shall surrender any interest in property securing said executory contracts and unexpired leases.

## PART 5:    DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

(a) Discharge.  The debtor shall not receive a discharge of debts until the debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) Vesting of Property.  On the Effective Date, all property of the estate and interests of the debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

c) Plan Creates New Obligations.  Except as provided in Part 6(d) and (e), the obligations to creditors that the debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.  The debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

## PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

(a) <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as the debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>.  The debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>.  If the debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon the debtor and the debtor's attorney (if any) a written notice of the debtor 's default.  If the debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then the debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect the debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except

Case: 11-56798   Doc# 224   Filed: 02/11/13   Entered: 02/11/13 16:03:53   Page 11 of 23

rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether the debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

## PART 7: GENERAL PROVISIONS

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, the debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. The debtor will create a reserve for disputed claims. Each time the debtor makes a distribution to the holders of allowed claims, the debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, the debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer

Case: 11-56798    Doc# 224    Filed: 02/11/13    Entered: 02/11/13 16:03:53    Page 12 of 23

needed in reserve shall be returned to the debtor.

(c) <u>Cramdown</u>.  Pursuant to section 1129(b) of the Bankruptcy Code, the debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

The debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor (Y/N) | Nature of Claim | Amount of Claim | Will the Debtor Prosecute Action? (Y/N) |
|---|---|---|---|---|
| Redwood Mortgage Investors VIII | Yes | Breach of Contract | $440,000 | Yes |
| Redwood Mortgage Investors VIII | Yes | Objection to claim and to recover attorneys' fees incurred in course of Chapter 11 case. | $100,000 | Yes |

(g) <u>Notices</u>.  Any notice to the debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

Gloria Elena Dheming
280 W. California, #205
Sunnyvale, CA  94086

(h) <u>Post-Confirmation United States Trustee Fees</u>.  Following confirmation, the debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6).  So long as the debtor is required to make these payments, the debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>.  Creditors with an allowed secured claim can make a

13

timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) <u>Third Party Assistance.</u> The debtor anticipates receiving assistance for plan payments by third parties.

## PART 8: VOTING

(a) <u>Who May Vote.</u> Creditors are entitled to vote on confirmation of the Plan unless (i) the class is unimpaired (presumed to accept) or is to receive no distribution (presumed to reject); (ii) an objection or adversary proceeding as been filed with respect to that creditor's claim; or (iii) the claim is unclassified (required by law to be paid in full).

(b) <u>How to Vote.</u> All ballots must be **received** by the debtor's counsel on or before 6:00 pm on _____, 2012. Please complete, sign and return the enclosed ballot by using the enclosed envelope, addressed as follows:

Macdonald | Fernandez LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104

(c) <u>Effect of Vote.</u> The Plan will be confirmed only if it is accepted by each impaired class, or if it is accepted by at least one impaired class (exclusive of insiders) and the Court determines it is fair and equitable to all dissenting classes. A class of creditors accepts the Plan if it is accepted by a majority in number and two-thirds in dollar amount of creditors who cast ballots. A class of interests accepts the Plan if it is accepted by two-thirds in dollar amount of interest holders who cast ballots. The debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors pursuant to Bankruptcy Code Section 1129(b).

DATED: February 11, 2013

MACDONALD | FERNANDEZ LLP

By: ___/s/ Gloria Elena Dheming_____
    Gloria Elena Dheming
    Debtor-in-Possession

By: _/s/ Iain Macdonald_____
    Iain Macdonald
    Attorneys for Debtor-in-Possession,
    Gloria Elena Dheming

14

**Attorney Certification**

I, <u>Iain A. Macdonald</u>, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

- Page 2, line 21: removed paragraph entitled "Creditors' Rights Remain Unchange";
- Page 2-3, lines 22-2: adjusted terms on the secured creditor's claim;
- Page 3, line 15: added "adjust terms;"
- Pages 3-4, lines 15-13: new category and adjusted terms on the secured creditor's claim;
- Page 5, line 18: changed the word "above" to "following;"
- Page 5-6, lines 25-7: changed the language for "property to be surrendered" category;
- Page 6, lines 11-15: changed the language and added additional information;
- Page 7-8, lines 20-3: deleted language referring to other administrative claims;
- Pages 8-9, lines 15-20: additional section regarding security deposits;
- Page 14, lines 3-4: additional section on third party assistance;
- Pages 13-14, lines 27-22: additional section on Voting.

I declare that the foregoing is true and correct. Executed this 11th day of February, 2012.

/s/ Iain A. Macdonald
Iain A. Macdonald
Attorneys for Debtor-in-Possession,
Gloria Elena Dheming

15

**EXHIBIT 1**

The debtor owns and operates two rental properties: 1) 4-unit apartment building located at 2787 California Street, San Francisco; and 2) 3-unit apartment building with license permit cottage (single family residence) located at 864-868 Dolores Street, San Francisco, California. The debtor owns 100% of Dolores Street property and 50% of the California Street property with her brother, Jose Dheming.

On or around March 13, 2007, the debtor obtained a loan in the amount of $3,015,000.00 from Redwood Mortgage for the purchase of certain real property located at 3101-3103 Jackson Street/2149 Lyon St, San Francisco, CA 94115 ("Jackson Street Property"). The Redwood Mortgage loan is secured by the First Deed of Trust against the Jackson Street Property. The California Street Property and Dolores Street Property serve as additional collateral for the same loan.

On March 28, 2010, the debtor sold the Jackson Street Property for $2,859,000. Redwood Mortgage has asserted a secured claim against both California Street Property and Dolores Street Property in the approximate amount of $660,000 for the unpaid loan balance, including unpaid interest and arrears.

On or about June 21, 2011 Redwood Mortgage enforced its aforesaid liens against the rents generated by the properties by giving notice to the tenants to pay their rents to Redwood Mortgage. Thereafter, on June 28, 2011, Redwood Mortgage obtained the appointment of a receiver in the San Francisco County Superior Court to take possession and control of said rents.

On July 21, 2011, the debtor sought relief under chapter 13 of the Bankruptcy Code in order to forestall action by Redwood Mortgage to foreclose and collect rents from real properties owned by the debtor.

The case was then converted to a chapter 11 by order of the court on September 14, 2011. No trustee has been appointed and the debtor is in possession of her estate. The debtor replaced her original counsel with Macdonald | Fernandez LLP (formerly known as Macdonald & Associates).

Case: 11-56798   Doc# 224   Filed: 02/11/13   Entered: 02/11/13 16:03:53   Page 16 of 23

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7 (February 11, 2013)**

### Real Property Income: 864-868 Dolores Street, San Francisco, CA 94110

| Fair Market Value | | Liens | Cost of Sale (10%) | Resulting Income Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|---|
| $1,332,500.00 | 1st | -$1,611,261.52 | -$133,250.00 | | $0.00 | $0.00 |
| | 2nd | -$466,654.00 | | | | $0.00 |
| | | | | | **Total** | **$0.00** |

### Real Property Income: 2787 California Street, San Francisco, CA 94115

| Fair Market Value (50% ownership) | | Liens | Cost of Sale (10%) | Resulting Income Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|---|
| $933,500.00 | 1st | -$1,554,128.79 | -$186,700.00 | | $0.00 | $0.00 |
| | 2nd | -$436,444.01 | | | | $0.00 |
| | | | | | **Total** | **$0.00** |

| | | | | **Total Net Proceeds of Real Property** | | **-$3,366,211.12** |
|---|---|---|---|---|---|---|

### Partially Exempt & Non-exempt Personal Property
(See attached Schedule C for a list of the debtor's fully-exempt Personal Property)

| Description | Liquidation Value | Secured Claim(s) | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $75 | $0 | -$75 | $0 |
| Checking Account | $3,705 | $0 | -$3,696 | $9 |
| 50% ownership interest in Central American Investments, Inc. | Unknown | $0 | $0 | $0 |
| 2008 BMW Station Wagon | $35,855 | -$18,813 | -$17,042 | $0 |
| 2007 Toyota Tundra (Surrendered) | $0 | $0 | $0 | $10,000 |
| | | | **Total** | **$10,009** |

### NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS

| | Amount of Exemption | Net Proceeds |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | $0.00 | |
| Recovery from Preferences/Fraudulent Conveyances (ADD) | $50,000.00 | (estimate) |
| Chapter 11 Administrative Claims (SUBTRACT) | -$75,000.00 | (estimate) |
| Disputed Priority Claims (SUBTRACT) | -$502,500.95 | |
| **Total** | **$0.00** | |

### CHAPTER 11 VS. CHAPTER 7

| | |
|---|---|
| Estimated Amount of General Non-Priority Unsecured Claims | $1,151,000.00 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 10% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0% |

**Exhibit 3 - Personal Income and Expenses (February 11, 2012)**

**Income from Wages, Business, & Other:**

| | | |
|---|---|---|
| | **Total Net Income from Wages:** | **$0.00** |

**Expenses**

| | |
|---|---|
| Household Expenses (e.g. food, household maintenance) | $0.00 |
| Transportation Expenses (e.g. car payments, insurance, fuel) | $0.00 |
| Personal Expenses (e.g. Clothing, laundry, medical, recreation)* | $0.00 |
| **Total Expenses:** | **$0.00** |

| | |
|---|---|
| **TOTAL NET INCOME FROM WAGES, REAL PROPERTY, AND OTHER INCOME** | **$0.00** |

*Debtor resides with a friend, as his guest, and pays no personal living expenses.

**Exhibit 4 - Feasibility Analysis (February 11, 2013)**

**1. Can the Debtors Make the Effective Date Payments?**

| | |
|---|---|
| **Total Cash on Hand (December 2012 MOR)** | $227,978 |
| **Andino Advance** | $950,000 |
| *Less:* **Effective Date Payments** | |
| Administrative Expense Claims | 0 |
| 28 U.S.C. §1930(a)(6) U.S. Trustee Fees | -$325 |
| U.S. Bank Pay Down | -$300,000 |
| Wells Fargo Bank Pay Down | -$300,000 |
| Redwood Pay Down | -$300,000 |
| Unsecured Creditors | -$115,000 |
| Professional Fees | -$75,000 |
| Priority Tax Claims | -$10,500 |
| Total Payments | -$1,100,825 |
| **NET CASH AFTER EFFECTIVE DATE PAYMENTS** | **$77,153** |

**2. Can the Debtors Make the Plan Payments?**

| | Year 1 |
|---|---|
| **Beginning Cash** | **$77,153** |
| Annual Net Personal Income from | |
| Salary, Real Property & Other Income (Exhibit 5) | $21,516 |
| *Net Cash for Plan Payments* | *$98,669* |
| *Deduct:* **Annual Plan Payments** | |
| Classes 2-3 (See Exhibit 5) | $0.00 |
| **Class 4** ($350,000 Lump-Sum)* | $0.00 |
| **Disputed Priority Tax Claim** (Federal Income Tax) | TBD |
| **General Non-priority Unsecured Claim** (10% Lump-Sum)* | N/A |
| 28 U.S.C. §1930(a)(6) U.S. Trustee Fees | -$1,300 |
| *Total Annual Plan Payments* | *-$1,300.00* |
| **CASH AVAILABLE AFTER PLAN PAYMENTS** | **$97,369.00** |

\* The debtor will receive assistance from a third party to provide lump-sum
plan payments to creditors under the plan.
\*\*A portion of this cash represents rents subject to Redwood's claim, which
wil be paid to it on accounts of its claim.

**Exhibit 5 - Monthly Income and Expenses Related to Investment Properties (February 11, 2013)**

### Real Property Income: 864-868 Dolores Street, San Francisco, CA 94110

| Rental Income | Mortgage | Property Insurance | Property Tax | Utilities | Management | Maintenance & Repairs | Net Income |
|---|---|---|---|---|---|---|---|
| $9,625.00 | -$4,636.39 | -$226.23 | -$2,308.97 | -$391.00 | $0.00 | -$200.00 | $863.00 |
| | | | | | | **Total:** | **$863.00** |

### Real Property Income: 2787 California Street, San Francisco, CA 94115

| Rental Income | Mortgage | Property Insurance | Property Tax | Utilities | Management | Maintenance & Repairs | Net Income |
|---|---|---|---|---|---|---|---|
| $10,350.00 | -$5,631.60 | -$300.00 | -$2,620.92 | -$667.00 | $0.00 | -$200.00 | $930.48 |
| | | | | | | **Total:** | **$930.48** |

| TOTAL NET INCOME FROM WAGES, REAL PROPERTY, AND OTHER INCOME | $1,793.48 |
|---|---|
| (Annualized x 12 = $21,516) | |

<u>Exhibit 6 - Additional Feasibility Analysis</u>

Debtor is obtaining funding of $950,000 from Ms. Daisy Flores Andino, an old family friend, who will be secured by junior liens on the property. She has demonstrated to debtor's satisfaction that she has funds available by a bank line-of-credit. See attached letter from Daisy Flores Andino dated November 1, 2012.

Amounts necessary to fund the plan, including disputed claims, on the effective date, are as follows:

| | |
|---|---|
| U.S. Bank Pay Down: | $ 300,000.00 |
| Wells Fargo Bank Pay Down: | $ 300,000.00 |
| Redwood Mortgage Pay Down: | $ 300,000.00 |
| Unsecured Creditors: | $ 115,000.00 |
| U.S. Trustee Fees: | $         325.00 |
| Professional Fees: | $     75,000.00 |
| Total: | $   790,325.00 |

The Internal Revenue Service is not being paid in full at the time of confirmation, given the large amount of its claim, which is disputed. The plan provides (page 8, line 12) that a monthly payment of $10,506.72 will be necessary to retire this claim in full. It is anticipated that this amount will be much less. In any event, Ms. Flores will advance such monies to the debtor as are necessary to make this payment, pending resolution.

## DAISY JUDITH FLORES ANDINO

COLONIA LOMAS DEL GUIJARRO, EDIFICIO TORRES SKY, APARTAMENTO # 1201,
TEGUCIGALPA, HONDURAS

November 1, 2012

Ms. Gloria Elena Dheming
280 W. California, #205
Sunnyvale, CA 94086

Re: *In re Gloria Elena Dheming*; Chapter 11 Case No. 11-56798

Dear Gloria:

This will confirm that we have had extensive discussions with respect to your plan to save your two San Francisco properties, for which you have worked long and hard to acquire and maintain. Our families have a longstanding relationship and I am prepared to advance the monies to you that would be necessary to fund the plan.

This letter, that you may show to the court, will confirm that I have a line of credit earmarked for this purpose in the amount of US $950,000 dollars , which funds I am prepared to make available to you as necessary. A copy of confirmation of this from Banco Atlantida is enclosed.

You will not be required to make any repayments of principal or interest until you have completed all of the obligations under the terms of your plan. Following completion of the plan, we will discuss repayment arrangements.

Sincerely yours,

Daisy Judith Flores Andino

Enclosure

Tegucigalpa MDC, September 28, 2012

**Mrs. Daisy Flores**

We are issuing this letter upon your request to confirm to you the availability of up to US$ 950,000.00 dollars in your line of credit with Banco Atlantida.

If you should require us to make payment on your behalf in the United States, we can do so via our corresponding in U.S. Banks.

We would require specific written instruction from you to be able to make any disbursement. In addition you would need to provide us instruction with all the information of what Bank in USA these funds would be sent to.

Please give us a call when you are ready to make transaction so we can go over with you to confirm all information and be able to execute your written instructions when you provide them to us.

Please feel free to contact us if you should require any additional information.

As always we appreciate the trust you place in our institution.

Best regards,

BANCO ATLANTIDA, S.A.

ORLANDO CASTELLANOS
Corporate Banking

BANCO ATLANTIDA
SEGURIDAD    SOLIDEZ    SERVICIO

Oficina Principal Plaza Bancatlan Bulevar Centroamerica, Tegucigalpa, Honduras C.A.

Apartado Postal 3164, http://www.bancatlan.hn